# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Yumar A. Burks,

                Petitioner,        Case No. 16-cv-13051

v.                                        Judith E. Levy
                                              United States District Judge

Randall Haas,

                                              Mag. Judge Mona K. Majzoub
                Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS [1] AND DENYING PETITIONER A CERTIFICATE OF APPEALABILITY

Prisoner Yumar A. Burks filed this habeas corpus petition under 28 U.S.C. § 2254, proceeding pro se. He was convicted of felony murder, Mich. Comp. Laws § 750.316, and first-degree child abuse, Mich. Comp. Laws § 750.136(b)(2), and now seeks habeas relief on the grounds that (1) insufficient evidence supported his conviction for first-degree child abuse and, therefore, felony murder, (2) the trial court improperly denied his request for a second-degree child abuse instruction, and, alternatively, (3) counsel was ineffective for failing to request the instruction.

For the reasons set forth below, the Court denies the petition for a writ of habeas corpus. Because an appeal would be frivolous, the Court also denies Petitioner a certificate of appealability.

I. Background

Petitioner's convictions arise from the death of his son, Antonio. The Michigan Court of Appeals summarized the evidence admitted at trial as follows:

> The evidence at trial demonstrated that defendant had been feeling stress and frustration because he could not find a job that would provide for his family. Sheretta Lee, who is defendant's ex-wife and Antonio's mother, testified that several weeks before Antonio's death, when defendant drove her to work with two of their children, he threatened to drop her and the children off and then drive off a cliff. Lee was frightened because of defendant's statements and his erratic driving, and when she got to work, defendant drove away with the children at such a high rate of speed that the tires on the car left skid marks. Lee called the police, who later confirmed the children were not harmed. While Lee never saw defendant slap or punch Antonio, when Antonio was three months old, defendant began giving the baby hickeys on his cheeks. Lee also testified that Antonio cried a lot and that defendant would get frustrated trying to calm the baby down.
>
> Lee further testified that, on the morning of March 24, 2011, defendant expressed frustration with his temporary employment agency, punched several holes in the walls, and told her "that could have been you." When Lee thought that defendant had calmed down, she left to take the couple's two older children to daycare and to go to work, leaving Antonio in defendant's sole care and custody.

Travis Parris, defendant's friend and neighbor, testified that defendant came over to play video games at around 5:00 p.m. A few hours later, Parris told defendant to go home and check on Antonio. Parris called defendant several times after he left, but defendant did not answer. When Lee returned home with the older children around midnight, defendant put one of the children to bed while the child was still fully clothed with his coat and shoes. Defendant also instructed Lee not to wake Antonio.

Lee testified that she went to bed, while Parris testified that defendant again visited his house. However, Parris said that on this visit, instead of playing video games, defendant just sat on the couch, which was not normal for him. Lee testified that she woke up at around 3:00 a.m., when she heard defendant pacing the room, and again, at around 10:00 a.m., when she got up for the day. When she touched Antonio, she discovered that he was very cold, and that he had bruising all over his body that had not been there the previous day. Lee called 911, and relayed instructions to defendant on how to perform cardiopulmonary resuscitation (CPR) on a baby by using only two fingers.[ ]

Upon arriving on the scene, the police found defendant performing adult CPR on the infant. A responding officer pulled defendant off the baby so that he could perform infant CPR, but the baby was cold and lifeless. Officer Scott Sexton observed injuries on the baby's body, but significantly, there was no bruising in the area where defendant was performing CPR. A firefighter who had responded to the scene testified that, when he removed the baby's diaper, he noticed that the diaper was dry and the baby had been freshly powdered. He found this unusual because the bowels and bladder release upon death. In the aftermath of the police arrival at the scene, defendant was observed punching holes in the drywall.

The baby was then taken to the hospital by paramedics. The treating emergency physician, Dr. Martin Romero, declared the baby dead and opined that he had been dead for between 4 and 24 hours. Dr. Romero observed multiple bruises and abrasions on the baby's face, abdomen, and legs, healing bruises on his arms, a torn frenulum,[ ] and "Cullen's sign," a purple discoloration of the abdomen that indicates internal bleeding. Dr. Romero also observed that Antonio's diaper was clean and testified that stool and urine are expelled at the time of death.

The forensic pathologist, Dr. John Bechinski, who performed the autopsy on the baby, testified that Antonio had died as a result of multiple blunt force trauma. The doctor's internal examination revealed two areas of bleeding under the scalp, a full thickness tear of the superior vena cava, bleeding in the cavity next to the heart, bruises to the surface of the lungs, bleeding within the lungs, four liver lacerations, two spleen lacerations, bleeding in the abdominal cavity, a thick hemorrhage around the left testicle, bruising on the diaphragm, thymus, colon, and duodenum, bleeding around the right adrenal gland, and pulpification of that same adrenal gland. Dr. Bechinski opined that the number, location, and severity of the internal injuries were inconsistent with improperly performed CPR and were possibly caused by squeezing, punching, shaking, or being struck against a wall. Dr. Bechinski equated the force required to cause the injuries to Antonio's vena cava and the cavity next to his heart to the force involved with a high-speed vehicle collision. Dr. Bechinski testified that the photos of Antonio's injuries resembled those in forensic pathology textbooks of battered children.

Defendant made several conflicting statements to the police. When first interviewed, defendant only admitted giving Antonio hickeys on the cheek and occasionally pinching and slapping Antonio when he was fussy. In a second interview, defendant stated that he did not slap Antonio and that he was

4

always gentle with him. Defendant further stated that Antonio had fallen off of the bed five different times in the past and that was how he had become so bruised. In a third interview, defendant stated that Antonio must have been injured by his three-year-old sibling who had pulled him off the bed and punched him. Defendant later changed his story again and said that he had fallen asleep next to Antonio and had accidently rolled on top of him. When he awoke, Antonio was gasping for air. Defendant said he shook Antonio and punched his sides in an effort to revive him. Defendant also said he put Antonio in the bath to revive him and that he dropped Antonio onto the side of the tub when he attempted to lift him out. Defendant further stated that he cleaned the baby and put him to bed, intending to take him to an urgent care facility in the morning.

At trial, defendant admitted that he had not been completely truthful in his interviews with the police, but asserted that his third statement to the police had been the most truthful. Defendant testified that around 10:00 p.m., he lay down on the bed with Antonio to take a nap and that he rolled over onto Antonio for roughly a minute. When he awoke, Antonio was having difficulty breathing. Defendant testified that he performed CPR on Antonio, who appeared to be all right afterward. Defendant further testified that he then gave Antonio a bath, and that he stepped out of the bathroom momentarily, at which time Antonio became partially submerged in the bathtub. Defendant claimed he pulled Antonio out of the water and again successfully performed CPR. But defendant also admitted that he had struck Antonio while performing CPR to get the baby to breathe. Defendant testified that Antonio appeared to be breathing fine and went to sleep. Defendant further testified that he went to bed around 3:00 a.m. When he woke up in the morning, he learned that his son had died. Defendant denied that he had intended to hurt or to harm Antonio, or that he knew his actions would harm Antonio.

> After the close of the proofs, defense counsel requested that the jury be instructed on the offense of second-degree child abuse, arguing that the jury could find defendant's actions had only been reckless. The trial court denied the request, finding that, according to the pathologist's testimony, blunt force trauma caused Antonio's death, that defendant admitted intentionally striking the baby, and that therefore, defendant's act resulting in death was intentional. The trial court further concluded that, given these findings, there was no evidence that any reckless act by defendant resulted in serious injury to Antonio, and that, therefore, the jury should not be instructed on second-degree child abuse. The jury subsequently convicted defendant of felony murder and first-degree child abuse.

*People v. Burks*, 308 Mich. App. 256, 259–63 (2014). Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, arguing only that insufficient evidence supported his convictions and that the trial court erred in declining to give a second-degree child abuse instruction. The Michigan Court of Appeals held that second-degree child abuse is a necessarily included lesser offense of first-degree child abuse but otherwise affirmed, *id.*, and Petitioner then filed an application for leave to appeal in the Michigan Supreme Court. In lieu of granting leave, the Michigan Supreme Court vacated that part of the Court of Appeals opinion holding that second-degree child abuse is a necessarily included lesser offense of

first-degree child abuse. This was because "[t]he Court of Appeals did not need to reach this issue because that instruction was never requested in the trial court." In all other respects, however, leave to appeal was denied. *People v. Burks*, 498 Mich. 966 (2016). This petition followed.

## II. Legal Standard

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case

differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

Section 2254(d), as amended by the AEDPA, "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010). A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). As a result, "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

8

decision" of the Supreme Court. *Id.* Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable. *See Wetzel v. Lambert*, 565 U.S. 520, 525 (2012).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998).

## III. Discussion

### A. Sufficiency of the Evidence

First, Petitioner argues that the prosecutor presented insufficient evidence to support his first-degree child abuse conviction. Specifically, he claims that the prosecutor failed to satisfy the intent element beyond a reasonable doubt. And since his felony murder conviction was predicated on the first-degree child abuse conviction, Petitioner concludes that habeas relief is warranted. (Dkt. 1 at 5.)

Under Michigan law, "[a] person is guilty of child abuse in the first degree if the person knowingly or intentionally causes serious physical or serious mental harm to a child." Mich. Comp. Laws § 750.316b.

9

Relatedly, "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). But "[t]wo layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204–05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis omitted)). And second, even if the Court "conclude[s] that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt . . . [it] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Here, the state appellate court's sufficiency determination was far from unreasonable. When reviewing the trial record, the Michigan Court of Appeals found ample evidence from which it believed a rational trier of fact could have found the element of intent beyond a reasonable doubt.

This included that Petitioner was obviously experiencing significant stress which manifested itself in erratic and aggressive ways; that he expressed frustration when Antonio would not stop crying; and that Petitioner expressed his frustration by punching holes in the walls of his home and by threatening his family. This was all in the days leading up to the baby's death. *Burks*, 308 Mich. App. at 264–65. The Court also noted Petitioner's irregular behavior in the hours that followed Antonio's death and the conflicting accounts of the incident that Petitioner gave to police during the subsequent investigation. *Id.* As the Michigan Court of Appeals concluded: "[f]rom this plethora of evidence, the jury could properly infer that defendant knowingly or intentionally caused serious harm to Antonio when he was in defendant's sole care and custody . . . ." *Id.* at 265.

Petitioner claims that the testimony of Dr. John Bechinski,, who performed the autopsy of Antonio, supports his position. At trial, Dr. Bechinski testified that there was no way to rule out the possibility that the improper administration of CPR was a cause of one or two of Antonio's injuries. (Dkt. 7-9.) Yet even if that is true, the Court cannot "rely simply upon [its] own personal conceptions of what evidentiary

11

showings would be sufficient to convince [the Court] of the petitioner's guilt." *Brown*, 567 F.3d at 205. Instead, it must ask whether the Michigan Court of Appeals "was unreasonable in its conclusion that a rational trier of fact could find [Petitioner] guilty beyond a reasonable doubt based upon the evidence presented at trial." *Id.* (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The state court's disposition of Petitioner's appeal was reasonable for the reasons set forth above. Therefore, the Court denies Petitioner relief on this claim.

### B. Second-Degree Child Abuse Instruction

Petitioner next argues that he is entitled to habeas relief because the trial court erred by declining to instruct the jury on second-degree child abuse. (Dkt. 1 at 7.)

Federal courts may grant habeas relief only on the basis of federal law that has been clearly established by the United States Supreme Court. 28 U.S.C. § 2254(d). The Eighth Amendment and the Due Process Clause require that a trial court instruct the jury on lesser included offenses in the context of a capital case. *Beck v. Alabama*, 447 U.S. 625, 637–38 (1980) (holding that a trial court is required to instruct on lesser included offenses where the failure to do so would result in the jury being

given an "all or nothing" choice of convicting on the capital charge or acquitting the defendant). However, "[t]he Supreme Court ... has never held that the Due Process Clause requires instructing the jury on a lesser included offense in a non-capital case." *McMullan v. Booker*, 761 F.3d 662, 667 (6th Cir. 2014); *see also Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) ("[T]he Constitution does not require a lesser-included offense instruction in non-capital cases."). Because the Supreme Court has never held that due process requires lesser-included offense instructions in a non-capital case, Petitioner's claim cannot form a basis for granting habeas relief. Therefore, the Court denies Petitioner relief on this second claim.

### C. Ineffective Assistance of Counsel

Finally, Petitioner argues that his trial attorney was ineffective in failing to properly request a second-degree child abuse instruction. (Dkt. 1 at 8–9.) Although Petitioner failed to exhausted his remedies by not raising this claim during his state court proceedings, the Court will nevertheless addresses its merits. *See Granberry v. Greer*, 481 U.S. 129, 131 (1987).

13

An ineffective assistance of counsel claim has two components. A petitioner must (1) show that counsel's performance was deficient and that (2) the deficiency prejudiced his or her defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). When evaluating an ineffective assistance of counsel claim, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

Here, Petitioner cannot show that his counsel's performance was deficient. During Petitioner's state court proceedings, the Michigan Supreme Court ruled that a second-degree child abuse instruction was never requested during his trial. *Burks*, 498 Mich. 966 (2016). However, this determination is clearly contradicted by the record. The trial transcript unambiguously shows that Petitioner's counsel requested a second-degree child abuse instruction and that the trial court rejected it. (Dkt. 7-11.) As a result, defense counsel was not ineffective for failing to request a second-degree child abuse instruction because he did in fact ask for it.

To the extent Petitioner is claiming ineffectiveness because defense counsel requested the instruction under a theory that led the trial court to reject it, here too, Petitioner's claim is unpersuasive. Under Michigan law, a person is guilty of second-degree child abuse when, in relevant part, either of the following apply:

> (a) The person's omission causes serious physical harm or serious mental harm to a child or if the person's reckless act causes serious physical harm or serious mental harm to a child.
> (b) The person knowingly or intentionally commits an act likely to cause serious physical or mental harm to a child regardless of whether harm results . . .

Mich. Comp. Laws § 750.136b(3). On direct appeal, the Michigan Court of Appeals held that the testimony received at trial supported an instruction under either theory. *Burks*, 308 Mich. App. at 270. But when requesting the second-degree child abuse instruction, defense counsel solely argued that Petitioner committed a reckless act which resulted in harm to Antonio. This reckless act theory was consistent with Petitioner's testimony that, on the night of Antonio's death, Petitioner accidentally rolled over on Antonio when they were both sleeping, and that when Petitioner left Antonio alone in the bathtub for several minutes the baby became submerged under water. It was therefore reasonable for defense

15

counsel to pursue this tact as it was consistent with Petitioner's own testimony. As such, absent evidence to the contrary, counsel's decision to focus on the reckless act theory is presumed to be the result of sound trial strategy. *Strickland*, 466 U.S. at 689.

Even if that were not the case, Petitioner has not shown that he was prejudiced by counsel's failure to request an instruction under the alternative theory. The Michigan Court of Appeals concluded that had the jury been so instructed, the jury's verdict would have been the same. *Burks*, 308 Mich. App. at 271–72. In coming to that decision, the state court again looked at the weight of evidence. This included Petitioner's inconsistent explanations of what transpired on the day of Antonio's death, his history of violence, his behavior on the morning before Antonio's death (becoming so angry that he punched holes in the wall), and evidence that he often grew frustrated when Antonio cried. *Burks*, 308 Mich. App. at 271. In other words, the error was harmless. And for the same reason, the Court also finds no reasonable probability that the result of the proceeding would have been different had defense counsel requested the instruction based on a different theory. Therefore, relief is additionally denied on Petitioner's third and final claim.

## IV. Conclusion

For the reasons set forth above, the Court will deny the petition for a writ of habeas corpus. Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the rules governing § 2254 proceedings requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, jurists of reason would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted, and denies a certificate of appealability. Petitioner will not be granted leave to proceed on appeal in forma pauperis because any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. (Dkt. 1.) The Court further **DENIES** a certificate of appealability and leave to appeal in forma pauperis.

IT IS SO ORDERED.

Dated: December 20, 2018  　　　s/Judith E. Levy
　Ann Arbor, Michigan  　　　　JUDITH E. LEVY
　　　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 20, 2018.

　　　　　　　　　　　　　　　s/Shawna Burns
　　　　　　　　　　　　　　　SHAWNA BURNS
　　　　　　　　　　　　　　　Case Manager